KYLE J. KAISER (13924)
CHRISTIANA L. BIGGS (13040)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: kkaiser@agutah.gov
        cbiggs@agutah.gov

*Counsel for Defendants Utah Board of Pardons & Parole and Mike Haddon*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AMANDA WOOD, et al., <br><br>      Plaintiffs, <br><br> v. <br><br> STATE OF UTAH, through UTAH DEPARTMENT OF CORRECTIONS (UDC); BRIAN NIELSON, EXECUTIVE DIRECTOR OF THE UDC; UTAH BOARD OF PARDONS & PAROLE (UBPP); MIKE HADDON, DIRECTOR OF THE UBPP; UTAH ADULT PROBATION & PAROLE (AP&P); DAN BLANCHARD, DIVISION DIRECTOR OF AP&P; all State Agencies, and DOE OFFICERS and AGENTS 1-50, <br><br>      Defendants. | **BOARD OF PARDONS AND PAROLE AND MIKE HADDON'S MOTION TO DISMISS** <br><br><br> Case No. 2:23-cv-00334-DBB <br><br><br> Judge David Barlow |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................. 2

TABLE OF AUTHORITIES .......................................................................... 3

MOTION ...................................................................................................... 7

FACTUAL BACKGROUND ......................................................................... 11

LEGAL STANDARD .................................................................................... 15

LEGAL ARGUMENT ................................................................................... 19

   1.   Plaintiffs Robles, Moguel, Williamson, and McNicol lack standing to bring any claim against the Board Defendants. ........................................................... 19

   2.   Plaintiffs Wood, Charles-Scott, Millers, Hinojosa, and McNicol's state-law tort actions are barred because they failed to timely file their action as required by statute of limitations. ............................................................................................ 24

   3.   The Board is not a proper defendant for claims for damages arising out of constitutional violations. ............................................................................... 25

      3.1.   The Board is not a "person" under § 1983. ..................................... 25

      3.2   Sovereign immunity bars state constitutional claims for damages against the Board. .......................................................................................................... 27

   4.   The Board Defendants are absolutely immune from lawsuits based on their release decisions. .................................................................................................... 28

      4.1.   Plaintiff's claims against the Board Defendants should be dismissed on the grounds of quasi-judicial immunity. ...................................................... 29

      4.2.   Plaintiffs' Claims Against the Board are Not Subject to Judicial Review. ...... 33

   5.   Plaintiffs fail to plead plausible claims against Mike Haddon. ............................. 36

   6.   The Board Defendants join State Defendants' additional arguments for dismissal of seven of Plaintiffs' causes of action. ..................................................... 37

CONCLUSION ........................................................................................... 41

WORD COUNT CERTIFICATION ............................................................... 42

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Alden v. Maine*,
  527 U.S. 706 (1999) ............................................................................................. 27
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 17, 37, 38
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................... 18, 37
*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................................. 20
*Bradford v. Erlacher*, No. 2:07-CV-0,
  0108-TC, 2007 WL 1052470 (D. Utah Apr. 4, 2007) ................................................. 39
*Bradley v. Fisher*,
  80 U.S. (13 Wall.) 335 (1871) ......................................................................... 29, 32
*Brown v. Newey*,
  No. 1:21-cv-00154-JNP-CMR, 2023 WL 2429415 & n.1............................................. 23
*Butz v. Economou*,
  438 U.S. 478 (1978) ............................................................................................. 30
*David v. Midway City*,
  No. 2:20-cv-00066-DBP, 2021 WL 6927739 (D. Utah 2021) ..................................... 24
*Dodds v. Richardson*,
  614 F.3d 1185 (10th Cir. 2010).............................................................................. 38
*Ellis ex rel. Estate of Ellis v. Ogden City*,
  589 F.3d 1099 (10th Cir. 2009).............................................................................. 25
*FDIC v. Meyer*,
  510 U.S. 471 (1994) ....................................................................................... 27, 28
*Forrester v. White*,
  484 U.S. 219 (1988) ....................................................................................... 29, 30
*Gee v. Pacheco*,
  627 F.3d 1178 (10th Cir. 2010).............................................................................. 18
*Goodsell v. Utah*,
  No. 2:06-CV-371 DB, 2006 WL 1720713 (D. Utah June 12, 2006) ............................ 26
*Hafer v. Melo*,
  502 U.S. 21 (1991) ............................................................................................... 27
*Hall v. Bellmon*,
  935 F.2d 1106 (10th Cir. 1991).............................................................................. 18
*Hall v. Witteman*,
  584 F.3d 859 (10th Cir. 2009)........................................................................... 17, 18

*Henriksen v. Bentley,*
    644 F.2d 852 (10th Cir. 1981) ............................................................................ 32

*Hill v. Vanderbilt Cap. Advisors,* LLC,
    702 F.3d 1220 (10th Cir. 2012) .......................................................................... 16

*Holt v. United States,*
    46 F.3d 1000 (10th Cir. 1995) ............................................................................ 17

*Hunt v. Iron Cnty.,*
    372 F. Supp. 3d 1272 (D. Utah 2019) ............................................................... 23

*Knoll v. Webster,*
    838 F.2d 450 (10th Cir. 1988) ............................................................................ 30

*Leverington v. City of Colo. Springs,*
    643 F.3d 719 (10th Cir. 2011) ............................................................................ 17

*Los Alamos Study Grp. v. U.S. Dep't of Energy,*
    692 F.3d 1057 (10th Cir. 2012) .......................................................................... 17

*Malek v. Haun,*
    26 F.3d 1013 (10th Cir. 1994) ............................................................................ 33

*Mireles v. Waco,*
    502 U.S. 9 (1991) ...................................................................................... 29, 31

*Muscogee (Creek) Nation v. Okla. Tax Comm'n,*
    611 F.3d 1222 (10th Cir. 2010) .......................................................................... 17

*N. Ins. Co. of N.Y. v. Chatham Cnty. Ga.,*
    547 U.S. 189 (2006) ........................................................................................... 28

*Osterkamp v. Salt Lake Cnty.,*
    No. 2:20-cv-00032-DAO, 2020 WL 5298866 (D. Utah Sept. 4, 2020) .................. 16

*Reid v. Okla. Pardon & Parole Bd.,*
    No. 02-6200, 67 F. App'x 515 (10th Cir. 2003) ................................................... 26

*Robbins v. Oklahoma,*
    519 F.3d 1242 (10th Cir. 2008) .......................................................................... 37

*Russ v. Uppah,*
    972 F.2d 300 (10th Cir. 1992) ............................................................................ 33

*Snell v. Tunnell,*
    920 F.2d 673 (10th Cir. 1990) ............................................................................ 29

*St. Louis Baptist Temple, Inc. v. FDIC,*
    605 F.2d 1169 (10th Cir. 1979) ..................................................................... 18, 23

*Stack v. McCotter,*
    No. 02-4157, 79 F. App'x 383 (10th Cir. Oct. 24, 2003) ..................................... 18

*Stein v. Disciplinary Bd. of Sup. Ct. of N.M.,*
    520 F.3d 1183 (10th Cir. 2008) .......................................................................... 29

*Straley v. Utah Board of Pardons,*
    582 F.3d 1208 (10th Cir. 2009) .......................................................................... 33

*Stump v. Sparkman,*
   435 U.S.(1978) ................................................................................... 32
*Swisher v. Hamilton,*
   No. 91-3254, 961 F.2d 220 1992 WL 86705 (unpublished table op.) ....................... 32
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) ............................................................................ 18
*Turney v. O'Toole,*
   898 F.2d 1470 (10th Cir. 1990) ................................................................ 30
*United States v. Hays,*
   515 U.S. 737 (1995) ............................................................................ 19
*Utah v. Babbitt,*
   137 F.3d 1193 (10th Cir. 1998) ............................................................. 19, 20
*Wach v. Cochran,*
   No. 22-4077, 2023 WL 164613 (10th Cir. Jan 12, 2023) ........................................ 30
*Whitesel v. Sengenberger,*
   222 F.3d 861 (10th Cir. 2000) ................................................................ 32
*Will v. Michigan Dep't of State Police,*
   491 U.S. 58 (1989) ..................................................................... 26, 27, 28

State Cases

*Ambus v. Utah State Bd. of Educ.,*
   858 P.2d 1372 (Utah 1993) ..................................................................... 25
*Bailey v. Utah State Bar,*
   846 P.2d 1278  (Utah 1993) .................................................................... 29
*Foote v. Utah Bd. of Pardons,*
   808 P.2d 734 (Utah 1991) ............................................................... 31, 34, 35
*Kuchcinski v. Box Elder Cnty.,*
   2019 UT 21 .................................................................................... 28
*Labrum v. Utah State Bd. of Pardons,*
   870 P.2d 902 (Utah 1993) .................................................................. 34, 36
*Lancaster v. Utah Bd. of Pardons,*
   869 P.2d 945 (Utah 1994) ..................................................................... 35
*Padilla v. Bd. of Pardons & Parole,*
   947 P.2d 664 (Utah 1997) ..................................................................... 34
*Parker v. Dodgion,*
   971 P.2d 496 (Utah 1998) ..................................................................... 30
*Peak Alarm Co. v. Shanna Werner,*
   2013 UT 8, 297 P.3d 592 ....................................................................... 39
*Pinder v. Duchesne Cnty. Sheriff,*
   2020 UT 68, 478 P.3d 610 ...................................................................... 16

*Preece v. House,*
   886 P.2d 508 (Utah 1994) ........................................................................... 35

*Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.,*
   2000 UT 87,16 P.3d 533 ............................................................................ 27

*Ward v. Smith,*
   573 P.2d 781 (Utah 1978) ........................................................................... 34

**Federal Statutes**

42 U.S.C. § 1983 ............................................................... 10, 25, 26, 29

**State Statutes**

Utah Code § 63G-7-201(4)(b) ................................................................ 40
Utah Code § 63G-7-402 ............................................................... 39, 40
Utah Code § 77-24-4 ............................................................................ 15
Utah Code § 77-27-2 ............................................................................ 15
Utah Code § 77-27-2(1) ....................................................................... 26
Utah Code § 77-27-2(1)(b) ................................................................... 15
Utah Code § 77-27-2(2)(h) ................................................................... 15
Utah Code § 77-27-5(1) ....................................................................... 32
Utah Code § 77-27-5(1)(b) ............................................................ 31, 37
Utah Code § 77-27-5(3) ....................................................................... 34
Utah Code § 77-27-7(1) ....................................................................... 21
Utah Code § 78B-2-304(4) ................................................................... 24
Utah Code §§ 63G-7-101(3) ................................................................. 27
Utah Const. art. VII, § 12 ............................................................... 33, 37

**Federal Rules**

Federal Rule of Civil Procedure 10(c) ................................................. 18
Federal Rule of Civil Procedure 12(b)(1) ....................................... 7, 16, 17

**Other Authorities**

DUCivR 7-1(a) .......................................................... 37, 38, 40, 42

## MOTION

Defendants Utah Board of Pardons & Parole and Mike Haddon, Former Administrative Services Director (collectively, the "Board Defendants"), through counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), move to dismiss Plaintiffs' Amended Complaint (doc. 40). The bases of the motion include:

1. Plaintiffs Robles and Moguel, personal representatives of the Estate of Sandra Robles, Plaintiff Christie McNicol, and Plaintiff Laurice Williamson, personal representative of the Estate of Morgan Kay Harris, lack standing to sue because the tortfeasors that are alleged to have murdered Ms. Robles and Ms. Harris and attacked Ms. McNicol were not under the supervision of any state agency or state agency employee. Rather, they were under court- or federal- supervision.

2. Plaintiffs Wood, Charles-Scott, Millers, Hinojosa, and McNicol's state-law tort actions are barred by Utah's two-year statute of limitations.

3. Claims against the Board should be dismissed because:

   - The Board is not a "person" subject to § 1983 liability; and

   - Sovereign immunity protects the Board from claims for damages under the Utah State Constitution.

4. The Board Defendants are immune from liability for decisions related to the release of inmates on parole, based on:

   - Quasi-judicial immunity; and

   - State statutory immunity.

5. Plaintiffs have failed to state any personal involvement, or otherwise state any plausible claim, against former Director Mike Haddon.

6. Plaintiffs failed to timely file their lawsuit within the statute of limitations.

7. The Board Defendants join the State Defendants' Motions to Dismiss:

   - Plaintiffs failed to state any personal involvement and have not alleged any affirmative link with supervisors.

   - Plaintiffs' state-law causes of action are barred by the Governmental Immunity Act of Utah:

     - Because Plaintiffs failed to file a Notice of Claim; and

     - Because the Immunity Act substantively bars Plaintiffs' tort claims.

   - Plaintiffs have not adequately stated a plausible violation of the Utah Constitution.

For these reasons, further described in the accompanying Memorandum of

Law, the Board Defendants respectfully request that the Court dismiss Plaintiffs'
Complaint, with prejudice.

## MEMORANDUM OF LAW

### INTRODUCTION

This is the second complaint brought by Plaintiffs in this case, who allege
that they are the victims, or the personal representatives of victims, of crime
perpetrated by people on parole. After the Board Defendants and other State of
Utah defendants filed motions to dismiss, Plaintiffs sought leave to amend their
complaint. Instead of addressing the deficiencies highlighted by the motions to
dismiss and limiting the scope and nature of their claims, Plaintiffs mostly
doubled down, relying on allegations "upon information and belief" contrary to
public records, and expanding their claims to include additional claimants that
have no standing to sue.

The Board Defendants continue to recognize that Plaintiffs have the right to
seek justice for the harms that might have been inflicted on them. But for the
reasons stated in their original Motion to Dismiss, and which are repeated here,
the Board Defendants are not the correct defendants, and this lawsuit is not the
right vehicle, for Plaintiffs' claims.

Preliminarily, four Plaintiffs seek relief for damages caused by individuals

not under the Board's jurisdiction. One alleged criminal was under court-supervised probation. Another alleged criminal was under federal, not state, supervision, at the time of the events. A third alleged criminal was on AP&P supervised probation, but had never been under the Board's jurisdiction. Therefore, those Plaintiffs lack standing to bring their claims against the Board Defendants.

Additionally, the state-law claims brought by Plaintiffs Wood, Charles-Scott, Millers, Hinojosa, and McNicol are barred by Utah's two-year statute of limitations applicable to claims against government actors.

All the constitutional claims brought by all of the Plaintiffs should be dismissed against the Board because state agencies are not "persons" under 42 U.S.C. § 1983, and sovereign immunity bars claims for money damages against State agencies under the State constitution.

Likewise, Plaintiffs' claims against the Board Defendants are barred because the Board, and its employees, are immune from liability for decisions made relating to the release of inmates on parole. This immunity is grounded in common-law quasi-judicial immunity and is explicitly stated in Utah state statute.

Further, Plaintiffs have attempted to sue former Board Administrative Director Mike Haddon but have failed to state any plausible claim against him,

either personally or as a supervisor.

Finally, the law does not allow recovery for Plaintiffs' proposed tort claims. Plaintiffs failed to comply with both the notice of claim requirements of the Governmental Immunity Act of Utah and the timely filing requirement of the applicable statute of limitations; thus, the Court lacks subject-matter jurisdiction over those claims. Plaintiffs' state tort claims are also substantively barred by the Immunity Act's bar on claims arising out of, among other things, a battery.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' Amended Complaint, documents that may appropriately be judicially noticed, or facts that may be considered under the "factual attack" standard for a motion to dismiss for lack of subject-matter jurisdiction and are accepted as true for the purposes of this motion only.[1]

1.     Plaintiffs Wood, Charles-Scott, and Dixon are personal representatives of crime victims who were allegedly killed by individuals who

---

[1] The Board Defendants note that criminal cases are still pending against several offenders named in the Amended Complaint, and those offenders remain presumptively innocent at this time. This recitation of facts is made solely to comply with the legal standards imposed by the Federal Rules of Civil Procedure and should not be read as any understanding or view of the Board Defendants as to the truth of any of the criminal allegations against offenders named in the Complaint whose charges have not been adjudicated.

were released on parole at the time of their crimes.[2]

2.     Plaintiffs Chris and Cindy Miller are parents of a minor who was sexually assaulted and kidnapped by an individual who was released on parole at the time.[3]

3.     Plaintiffs Wilfred Robles and Sandra Cecilia Moguel are co-personal representatives of the Estate of Sandra Fiorella Robles.[4] Ms. Fiorella Robles was murdered by Daniel Padilla-Ang on March 26, 2022.[5]

4.     Previously, Padilla-Ang pleaded guilty to a Class A Misdemeanor of Possession of Another's Identifying Document(s) and a Class C Misdemeanor of Giving False Personal Identity to a Peace Officer.[6] Padilla-Ang was sentenced to 364 days' confinement on the Class A Misdemeanor, and 90 days' confinement on the Class C Misdemeanor, which were suspended, was ordered to pay fines, and was ordered to complete 18 months' probation.[7] Padilla-Ang's probation was

---

[2] Pls.' Am. Compl. (doc. 40) ¶¶ 8–9, 13, 152-153, 171, 235.

[3] *Id.* ¶¶ 10, 340, 341.

[4] *Id.* ¶¶ 11, 12.

[5] *Id.* ¶ 220.

[6] Docket, *State v. Padilla*, Case No. 201101424, attached hereto as Exhibit A; Docket, *State v. Padilla*, Case No. 201403111, attached hereto as Exhibit B. The only district court criminal case Padilla-Ang had was Case No. 201101424 (transferred from Case No. 201403111).

[7] Sentence, Judgment, and Commitment, *State v. Padilla*, Case No. 201101424 FS, attached hereto as Exhibit C.

"supervised by AMERICAN FORK DISTRICT COURT."[8] As Padilla-Ang's court records demonstrate, Padilla-Ang was never committed to the custody of the Utah Department of Corrections, was never under the Board's jurisdiction, and the Board had never released him.[9]

5.    Plaintiff Christie McNicol alleges she was attacked and stabbed by Thomas Riessen on January 1, 2022.[10]

6.    Earlier, Riessen pleaded guilty to a felony offense of Interference With Commerce By Threat or Violence.[11] Riessen was sentenced to the custody of the United State Bureau of Prisons for 46 months on the felony conviction, and was ordered 36 months supervised release.[12] Riessen's federal supervised release was then terminated when the Court issued a Release Order for him to move into the Odyssey House, a rehabilitation program.  Riessen was "released from the custody of the US Marshal on Monday, November 1, 2021 … to a representative of Odyssey House."[13] As Riessen's court records clearly state, Riessen had been a federal prisoner and supervised releasee and was not under any state supervision

---

[8] *Id.* at 2.
[9] *Cf. id.*
[10] Pls.' Am. Compl. ¶ 291.
[11] Docket, *United States v. Riesen, et al.*, Case No. 2:17-cr-00454 (D. Utah filed Aug. 2, 2017), attached hereto as <u>Exhibit D</u>.
[12] *Id.*
[13] *Id.*

at the time of the event.[14]

7.     Plaintiffs Newman, Bethany Schmucker, and Herman Schmucker were victims of a home break-in, assaults and an arson committed by an individual who was released on parole at the time.[15]

8.     Plaintiff Laurice Williamson is the mother of a woman, Morgan Harris, who died in a fire at a storage facility in 2023.[16]  Though he has not been charged with any offense related to her daughter's death, Ms. Williamson believes that Alexander Wardell caused her daughter's death.[17]

9.     Alexander Wardell was on AP&P supervised probation—not parole— at the time of Ms. Harris' death.[18]  Alexander Wardell was not under the Board's jurisdiction at the time of Ms. Harris' death and had not been under the Board's jurisdiction at any time prior.

10.    Plaintiff Susan Zwalski was a victim of sexual assault allegedly perpetrated by a person on parole.[19]

---

[14] Release Order, *USA v. Riessen, et al*. Case No. 217-cr-00454, attached hereto as <u>Exhibit E</u>.

[15] Pls.' Am. Compl. ¶¶ 14-15, 249, 253, 255, 256–59.

[16] Pls.' Am. Compl. ¶ 16.

[17] Pls.' Am. Compl. ¶ 270.

[18] *See* Docket, *State v. Wardell*, Case No. 181913183, attached hereto as <u>Exhibit G</u>, at 11 (judgment of prison sentence suspended; order of probation); Docket, *State v. Wardell*, Case No. 191900006, attached hereto as <u>Exhibit H</u>, at 10–11 (same); Docket, *State v. Wardell*, Case No. 211907289, attached hereto as <u>Exhibit I</u>, at 12–13 (same).

[19] Pls.' Am. Compl. ¶ 280.

11.     Defendant Utah Board of Pardons and Parole is a constitutionally created Department of, and arm of, the State of Utah.[20] The Board comprises five full-time members and not more than five pro tempore members appointed by the governor and confirmed by the senate.[21] The Board is led by a chair who is empowered with the duties and powers "necessary for the administration of daily operations of the board."[22]

12.     Mike Haddon was, at all times relevant, the Director (Director of Administrative Services) of the Board.[23]

13.     Plaintiffs allege that the Board should not have released the individuals who committed subsequent crimes causing them injury, and that Haddon "allow[ed] … Offenders out of prison without supervision" without any further elucidation of what, if any, actions Haddon took.[24]

**LEGAL STANDARD**

---

[20] Pls.' Am. Compl. ¶ 27; *see also* Utah Const. art. VII, § 12; Utah Code § 77-27-2.

[21] Utah Code § 77-27-2(1)(b).

[22] Utah Code § 77-24-4.

[23] Pls.' Am. Compl. ¶ 28; *see also* Utah Code § 77-27-2(2)(h) ("The chair may request staff and administrative support as necessary from the department."). Plaintiffs mistakenly allege that Haddon's title was simply "Director," but his title was Director of Administrative Services. *See* Utah Board of Pardons & Parole, Organizational Structure, http://bop.utah.gov/organization_structure (updated March 2021) (last visited April 25, 2024). These errors are not material for the purposes of this motion.

[24] Pls.' Am. Compl. ¶¶ 38–39, 42, 43, 115, 153-154, 171-172, 200-201, 236–37, 25–51, 271–72, 28–82, 292–93, 303–04.

The Board Defendants challenge Plaintiffs Robles, Moguel, Williamson, and McNicol's standing to sue. Because standing is "an element of subject matter jurisdiction," *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012), this portion of the motion is brought under Federal Rule of Civil Procedure 12(b)(1).

In addition, the Board Defendants join the Corrections Defendants' Motion to Dismiss on the ground that certain Plaintiffs have failed to timely and properly file a Notice of Claim under the Governmental Immunity Act of Utah.[25] Because the failure to file a notice of claim deprives the court of subject-matter jurisdiction over covered state-law claims, *Pinder v. Duchesne Cnty. Sheriff*, 2020 UT 68, ¶ 59, 478 P.3d 610, 623, motions to dismiss for lack of notice of claim are also adjudicated under Rule 12(b)(1). *See, e.g.*, *Osterkamp v. Salt Lake Cnty.*, No. 2:20-cv-00032-DAO, 2020 WL 5298866, at * 5–6 (D. Utah Sept. 4, 2020) (unpublished) (analyzing Utah Immunity Act defenses, including a defective notice of claim, under a Rule 12(b)(1) standard)).

Federal Rule of Civil Procedure 12(b)(1) permits dismissal of cases for "lack of subject-matter jurisdiction." When a motion made pursuant to this rule is a "facial" attack on the claims as pleaded, the motion is reviewed applying the same

---

[25] *See* State Defs.' Mot. to Dismiss (doc. 55) § 3.2.

standards as one made pursuant to Rule 12(b)(6). *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). Under a "factual" attack of subject-matter jurisdiction, the Court may accept evidence, "weigh the evidence and make factual findings" without having to convert the motion to one for summary judgment. *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1064–65 (10th Cir. 2012); *see also Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

The Board Defendants bring their remaining challenges to Plaintiffs' Amended Complaint under Rule 12(b)(6). In reviewing a 12(b)(6) motion, a court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff. *E.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011). But a claim survives only if "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678; *Leverington,*

643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007));

*Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010) (citations and

quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted).

      In reviewing a motion to dismiss, the Court may rely on the facts as alleged

in the complaint, but may also rely on all documents adopted by reference in the

complaint, documents attached to the complaint, or facts that may be judicially

noticed. *See* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

U.S. 308, 322–23 (2007); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

In the context of a motion to dismiss, this Court may take judicial notice of a state

and federal court docket and filings. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605

F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in

appropriate circumstances, may take notice of proceedings in other courts, both

within and without the federal judicial system, if those proceedings have a direct

relation to matters at issue."); *Stack v. McCotter*, No. 02-4157, 79 F. App'x 383,

391 (10th Cir. Oct. 24, 2003) (unpublished) (recognizing that the court can take

judicial notice of a state district court docket sheet).

**LEGAL ARGUMENT**

1. **Plaintiffs Robles, Moguel, Williamson, and McNicol lack standing to bring any claim against the Board Defendants.**

Plaintiffs Wilfred Robles and Sandra Moguel, co-personal representatives of the Estate of Sandra Fiorella Robles, Plaintiff Laurice Williamson, personal representative of the Estate of Morgan Kay Harris, and Plaintiff Christie McNicol lack standing to bring any of their claims because the actions complained of were in no way related to any actions by any Board Defendant. In short, the release of Ms. Robles' murderer, Daniel Padilla-Ang, was never ordered by or supervised by the Board, former Director Haddon, or any DOC employee. Rather, Padilla-Ang was on court-supervised probation. Wardell, Ms. Harris's alleged killer, was on AP&P supervision but not subject to the Board's jurisdiction. And the release of Plaintiff McNicol's alleged attacker, Thomas Riessen, was never ordered by or supervised by the Board or former Director Haddon because Thomas Riessen was not even under state-supervised probation at the time of the event.

To determine whether a plaintiff has standing, the ultimate question is whether plaintiff is "'a proper party to invoke judicial resolution of the dispute.'" *Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998) (quoting *United States v. Hays*, 515 U.S. 737, 743 (1995) (further citations omitted)). To demonstrate that a plaintiff is a proper party, a plaintiff must show:

> (1)   that the plaintiff ha[s] suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there [is] a causal connection between the injury and the conduct complained of-the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Babbitt,* 137 F.3d at 1202 (quoting *Bennett v. Spear,* 520 U.S. 154, 166 (1997)).

Here, the focus is whether there is a causal connection between the injury and the conduct complained of. In this instance, the injury to these Plaintiffs is not a result of or fairly traceable to an action of the Board. Plaintiffs allege that the Board paroled Daniel Padilla-Ang, who, while under the supervision of AP&P, murdered the deceased.[26] To the contrary, Padilla-Ang was never released by the Board or otherwise under its jurisdiction while on parole, including the date of the offense, March 26, 2022. Padilla-Ang was, in fact, placed on *court-supervised* probation on January 12, 2021, after pleading guilty to Class A and Class C Misdemeanors and receiving a suspended sentence and 180 months' probation.[27] Padilla-Ang's probation was "supervised by AMERICAN FORK DISTRICT COURT."[28] Furthermore, Plaintiffs allege that Padilla-Ang's probation was a result

---

[26] Pls.' Am. Compl. ¶ 218.
[27] Sentence, Judgment, and Commitment, *State v. Padilla*, Case No. 201101424 FS, attached hereto as <u>Exhibit C</u>.
[28] *Id.* at 2.

of "prior domestic violence convictions."[29] However, the Board only has authority

over offenders who are convicted of felonies or class A misdemeanors.[30] Here, the

Court dismissed the 2017 Class B Misdemeanor charge against Padilla-Ang as part

of a plea agreement.[31] Therefore, as Padilla-Ang's court records demonstrate,

Padilla-Ang was never under the supervision of the Board for any domestic

violence conviction in 2017 or subsequent conviction in 2021.[32]

Although Padilla-Ang is now under the jurisdiction of the Board for the

deceased's murder, Padilla-Ang was never under the Board's jurisdiction prior to

his current commitment. Court records, which this Court may consider in

determining subject-matter jurisdiction, demonstrate that the Board Defendants

had no role in releasing Padilla-Ang. Plaintiffs cannot state any claim that the

injury they complain of is fairly traceable to the challenged action of the Board; in

other words, there is no causal connection. Therefore, Plaintiffs Robles and

Moguel lack standing because they have not shown and cannot show that it is

likely this Court will redress their claimed injury.

There is no causal connection between Plaintiff Williamson's injury and the

---

[29] Pls.' Am. Compl. ¶ 218.
[30] Utah Code § 77-27-7(1).
[31] Docket, Case No. 171900098, attached hereto as Exhibit F.
[32] *Cf. id.*

Board.  Plaintiff Williamson alleges that the Board Defendants "had allowed" Morgan Harris's alleged killer, Alex Wardell, out on parole.[33]  In reality, Wardell was on probation for his crimes at the time of the alleged incident and thus was never subject to the Board's parole jurisdiction. [34]

Likewise, causal connection does not exist between Plaintiff McNicol's injury and any action of the Board. Plaintiff McNicol alleges that the Board paroled Thomas Riessen, who, while under the supervision of APP, attacked and stabbed Plaintiff McNicol while on parole.[35] In reality, based on documents that the Court may take judicial notice of, Riessen was never under the Board's jurisdiction on date of the offense, January 1, 2022.[36] In fact, Riessen had been a federal prisoner and was not even under any state supervision at the time of the events.

All these plaintiffs therefore lack standing.

Even if the Court determines that these plaintiffs have standing, the Court may dismiss their claims as legally insufficient. The Court, under a 12(b)(6)

---

[33] Pl.'s Am. Compl. ¶ 271.
[34] *See* Docket, *State v. Wardell*, Case No. 181913183, attached hereto as <u>Exhibit G</u>, at 11 (judgment of prison sentence suspended; order of probation); Docket, *State v. Wardell*, Case No. 191900006, attached hereto as <u>Exhibit H</u>, at 10–11 (same); Docket, *State v. Wardell*, Case No. 211907289, attached hereto as <u>Exhibit I</u>, at 12–13 (same).
[35] Pls.' Am. Compl. ¶¶ 292–93.
[36] Pls.' Am. Compl. ¶ 294.

standard, may take judicial notice of state court docket sheets and filings without converting the motion to a motion for summary judgment. *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979). Those "filings" include things like pleas and statements in support of pleas; *Hunt v. Iron Cnty.*, 372 F. Supp. 3d 1272, 1284 n.7 (D. Utah 2019); state court's denials of appointment as a personal representative, *Keilbaugh v. Salt Lake City Police Dep't*, No. 2:19-cv-00017-JNP-PMW, 2020 WWL 2309131 at *1–2 nn.5–10 (D. Utah Feb. 21, 2020) (unpublished); and criminal charges, proceedings, and convictions found in criminal court dockets. *Brown v. Newey*, No. 1:21-cv-00154-JNP-CMR, 2023 WL 2429415, at *1–2 & n.1 (D. Utah March 9, 2023 (unpublished).

The Court may take judicial notice of the docket sheets, judgment and commitment orders, and release orders in the relevant cases. After reviewing those documents, the Court should conclude that the Board Defendants had no control over the releases of Padilla-Ang, Wardell, or Riessen, and had no responsibilities related to their supervision.

Accordingly, Plaintiffs Robles, Moguel, Williamson, and McNicol cannot state claims against the Board Defendants, and they should be dismissed, whether the Court determines that Plaintiffs Robles, Moguel, Williamson, and McNicol lack standing, or whether the Court determines that they fail to state plausible claims,

considering the clear evidence contained in judicially noticeable court records.

**2. Plaintiffs Wood, Charles-Scott, Millers, Hinojosa, and McNicol's state-law tort actions are barred because they failed to timely file their action as required by statute of limitations.**

Plaintiffs' Wood, Charles-Scott, Miller, Hinojosa, and McNicol's state-law claims should be dismissed because they did not file within the two-year statute of limitations. Plaintiffs' state-law tort and constitutional claims are governed by Utah Code § 78B-2-304(4), which requires that an action be brought within two years "in causes of action against a political subdivision of the state and its employees, for injury to the personal rights of another ...." Utah Code § 78B-2-304(4); *see also David v. Midway City*, No. 2:20-cv-00066-DBP, 2021 WL 6927739, at *3 (D. Utah 2021) (unpublished) (holding the two-year statute of limitations found in Section 78B-2-304(4) bars claims under the Utah Constitution).

None of these Plaintiffs filed their lawsuit within two years. All but one of the incidents occurred between January 27, 2020 and May 1, 2021. This suit was filed on May 24, 2023, more than two years later. McNicol's incident was the sole event that occurred later, on January 1, 2022. However, McNicol did not join this suit as a Plaintiff until the filing of the Amended Complaint on January 15, 2024,

which is also more than two years later. For this reason, therefore these Plaintiffs'
state law tort and constitutional claims are time barred.

### 3. The Board is not a proper defendant for claims for damages arising out of constitutional violations.

Next, the Court should dismiss the federal and state constitutional claims
brought against the Board. The Board, as an arm of the State of Utah, is not a
"person" subject to § 1983 liability. And, as an arm of the State, the Board retains
its sovereign immunity from suits for damages for violations of the Utah
Constitution.

### 3.1. The Board is not a "person" under § 1983.

Plaintiff's federal constitutional claims brought against the Board (Plaintiff's
First and Sixth Causes of Action) should be dismissed because State agencies
cannot be sued under 42 U.S.C. § 1983. Section 1983 provides a claim for relief
against "any person who, under color of state law, deprives another of rights
protected by the Constitution." *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d
1099, 1101 (10th Cir. 2009). To be sued under § 1983, an entity must be a
"person" as that term has been defined by the courts. *Ambus v. Utah State Bd. of
Educ.*, 858 P.2d 1372, 1376 (Utah 1993). However, "neither a State nor its
officials acting in their official capacities are 'persons' under § 1983." *Will v.
Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Governmental entities that are considered arms of the State for Eleventh Amendment purposes are also not "persons" under 42 U.S.C. § 1983. *Id.* "Accordingly, the State of Utah is not an appropriate party in a lawsuit brought under 42 U.S.C. § 1983, and the claims against it are not viable." *Goodsell v. Utah*, No. 2:06-CV-371 DB, 2006 WL 1720713 (D. Utah June 12, 2006) (unpublished).

Here, the Board is an arm of the State of Utah.  *See, e.g.*, Utah Code § 77-27-2(1) (creating the Board and requiring that the governor appoint, and Utah state Senate confirm, its members); *see also Reid v. Okla. Pardon & Parole Bd.*, No. 02-6200, 67 F. App'x 515, 517 (10th Cir. 2003) (unpublished) recognizing that Oklahoma's Parole Board was a state agency entitled to immunity). As an arm of the State of Utah, the Board is not a "person" and cannot be sued for violation of civil rights under § 1983.

Further, in their Amended Complaint, Plaintiffs have named Defendant Haddon and unnamed Board Members and Officers and Agents "in their official and individual capacities…."[37] Because "[s]uits against state officials in their official capacity … should be treated as suits against the state," *Hafer v. Melo*, 502 U.S. 21, 25 (1991), these official-capacity claims must also be dismissed. *Will*, 491 U.S. at 71.

---

[37] Pls.' Am. Compl. ¶¶ 29–30.

### 3.2    Sovereign immunity bars state constitutional claims for damages against the Board.

Similarly, Plaintiffs' asserted claim under the Utah Constitution (Plaintiff's Ninth Cause of Action) should be dismissed as the Board is entitled to sovereign immunity.

The State, or an agency of the State, may not be held directly liable for money damages for violations of the Utah Constitution (except for violations of the Takings Clause). *See Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 2000 UT 87, ¶¶ 19–26, 16 P.3d 533, 537–39. That is because the State and its agencies enjoy sovereign immunity from a suit for damages. *Alden v. Maine*, 527 U.S. 706, 713 (1999). And, unless expressly waived, all immunities— including sovereign immunity—are retained. Utah Code §§ 63G-7-101(3), -202(2).

Just as the sovereign immunity of the United States precludes a *Bivens* cause of action against the federal government or a federal agency for a violation of the United States Constitution, *see FDIC v. Meyer*, 510 U.S. 471, 484–85 (1994), so too does Utah's sovereign immunity bar claims for damages against State

agencies under the State constitution.[38] Accordingly, the state constitutional

claims should be dismissed against the Board.

### 4. The Board Defendants are absolutely immune from lawsuits based on their release decisions.

Next, the Court should dismiss *all* federal and state claims against the

Board Defendants because they are immune from suit for damages resulting

from their release decisions. This immunity derives from both common-law

quasi-judicial immunity and Utah law which specifically protects the Board's

decisions from further judicial review and applies to Plaintiffs' claims under

federal and state law.

---

[38] The Utah Supreme Court has recognized in damages suit for a violation of the state constitutional against employees of a county, that the entity may also be liable if a plaintiff can prove that an action taken to an official municipal policy caused the constitutional violation, and the policy or custom evidences deliberate indifference to the plaintiff's constitutional rights. *Kuchcinski v. Box Elder Cnty.*, 2019 UT 21, ¶¶ 32–35. However, that case is not applicable here. An arm of the State, unlike a county, enjoys sovereign immunity. *N. Ins. Co. of N.Y. v. Chatham Cnty. Ga.*, 547 U.S. 189, 193 (2006). Sovereigns cannot be sued for damages unless they consent—even for damages for constitutional rights violations. See *Will*, 491 U.S. at 63–64; *Meyer*, 510 U.S. at 475, 485–86 (holding that no *Bivens* remedy exists for damages for a federal constitutional violation against a federal agency). And even if *Kuchinski* did apply, Plaintiff's claims would only permit liability based on a Board policy, practice, or custom that evidences a deliberate indifference to constitutional rights and caused one of its employees to violate the constitution. *Kuchinski*, 2019 UT 21, at ¶ 34, 450 P.3d at 1068.  Plaintiffs' Complaint has failed to plead facts sufficient to meet that standard, so the claims against the Board may be dismissed on that alternative basis.

### 4.1.   Plaintiff's claims against the Board Defendants should be dismissed on the grounds of quasi-judicial immunity.

It is well-settled that judges are shielded with absolute immunity from suits for money damages based on their judicial action, including suits pursuant to 42 U.S.C. § 1983 and for suits based on state law. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991); *Forrester v. White*, 484 U.S. 219, 225–26 (1988); *Stein v. Disciplinary Bd. of Sup. Ct. of N.M.*, 520 F.3d 1183, 1189–90 (10th Cir. 2008) (citing *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir. 1990)); *Bailey v. Utah State Bar*, 846 P.2d 1278 1280 (Utah 1993) (recognizing judicial immunity barring state law causes of action).

The doctrine of judicial immunity ensures "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871). The rationale for this defense is to incorporate traditional common law immunities and to allow functionaries in the judicial system the latitude to perform their tasks absent the threat of retaliatory civil litigation. *Id.*

Plaintiffs allege that the Board "is not a judicial arm of the state."[39]

---

[39] Pls.' Am. Compl. ¶ 45.

Assuming that Plaintiffs mean that the Board is not formed under the judicial branch of government, that allegation is irrelevant. Judicial immunity "'is justified and defined by *the functions it protects and serves*, not by the person to whom it attaches.'" *Parker v. Dodgion*, 971 P.2d 496, 498 (Utah 1998) (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988) (emphasis added). Judicial immunity, accordingly, extends to functions that are "'intimately related and essential to the judicial decision-making process.'" *Id.* (quoting *Awai v. Kotin*, 872 P.21d 1332, 1334-45 (Colo. Ct. App. 1993)).

That immunity is not limited to members of the judicial branch. The U.S. Supreme Court has extended quasi-judicial immunity to administrative law judges (operating in the executive branch). *Butz v. Economou*, 438 U.S. 478, 514 (1978). The Tenth Circuit extends immunity to executive officers, like police officers, who execute a facially valid (even if unlawful) court order. *Turney v. O'Toole*, 898 F.2d 1470 (10th Cir. 1990). And the Tenth Circuit has specifically ruled that members of the Utah Board of Pardons are entitled to quasi-judicial immunity. *Knoll v. Webster*, 838 F.2d 450, 451 (10th Cir. 1988) (per curiam) (citing cases); *see also Wach v. Cochran*, No. 22-4077, 2023 WL 164613, at * 2 (10th Cir. Jan 12, 2023) (unpublished).

The common-law privilege that protects judges and quasi-judicial officers,

30

and that has been explicitly recognized to apply to the Board and its members by the Tenth Circuit, applies in this case as well. The Board continues to be a quasi-judicial body having statutory authority to determine "when and under what conditions, … offender[s] … may be released upon parole, ordered to pay restitution, or have their fines, forfeiture, or restitution remitted, or their sentences terminated." Utah Code § 77-27-5(1)(b). The Board "performs a function analogous to that of the trial judge in jurisdictions that have a determinate sentencing scheme." *Foote v. Utah Bd. of Pardons,* 808 P.2d 734, 735 (Utah 1991). And the Board did so in making any release decisions that might underlie any of Plaintiffs' claims. *See Mireles,* 502 U.S. at 12. Accordingly, the Board is entitled to quasi-judicial immunity, even if it is not part of the judicial branch.

Plaintiffs also seek to avoid the application of quasi-judicial immunity by alleging that the Board members' release decisions violated the Utah Legislature's Justice Reinvestment Initiative (JRI) program,[40] or because the Board members "do not have discretion on what law to follow or how it applies …."[41] However, neither allegations remove the protections of judicial

---

[40] Pls.' Am. Compl. ¶¶ 87–90.
[41] Pls.' Am. Compl. ¶ 44.

immunity.

First, Utah law does not undercut the Board's general discretion or decision-making authority. Utah Code § 77-27-5(1), cited by Plaintiffs to show that the Board's discretion is somehow cabined, and its decisions mandatory, provides that the Board "may" choose from five options when evaluating an offender's continued sentence.

Even if Utah state statute spoke in mandatory terms, that still does not affect the application of quasi-judicial immunity. Judicial immunity protects judges from civil liability for their judicial acts, even when these acts are beyond their jurisdiction or are executed erroneously, maliciously, or corruptly. See *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) (quoting *Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57(1978))). It exists even when a judge's execution of authority is flawed due to serious procedural errors. *Id.* at 359. It exists when a judge is alleged to have been part of a conspiracy. *Stump,* 435 U.S. at 354. And it "exists even if [members of a parole board] act erroneously in violation of constitutional rights, *or in violation of state law*." *Swisher v. Hamilton,* No. 91-3254, 961 F.2d 220 1992 WL 86705 at * 1 (unpublished table op.) (10th Cir. April 24, 1992) (emphasis added) (citations omitted)).

Even if the Board's duties could be construed as erroneous decisions, so long as the decision was an exercise of the legal authority to make such decisions, the Board's actions would be entitled to immunity. "Damages simply are not available against parole board members" for quasi-judicial actions taken in performance of the Parole Board's official duties." *See Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992). The Board and its collective members are immune from suit.

Similarly, Plaintiffs do not allege that former Director Haddon had any role in the release determinations,[42] but if he did, he would also be immune. *See Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir. 1994) (defendant members of the Board are immune based on their entitlement to either absolute or qualified immunity); *see also Straley v. Utah Board of Pardons*, 582 F.3d 1208, 1214 (10th Cir. 2009) ("In sum, our previous holding in *Malek* is still patent.").

### 4.2.  Plaintiffs' Claims Against the Board are Not Subject to Judicial Review.

Outside of common-law immunities, Utah statutes immunize the Board from liability. The Utah Constitution gives to the Parole Board power to "grant parole … subject to regulations as provided by statute." Utah Const. art. VII, §

---

[42] Pls.' Am. Compl. ¶ 83 (alleging, without any further factual elucidation, that BOPP engaged in "willful misconduct" by "allowing unqualified persons with violent histories to be released on parole").

12(2)(a). In general, decisions of the Board of Pardons and Parole are not subject

to general judicial review. Instead, Utah Code § 77-27-5(3) provides, "[d]ecisions

of the board in cases involving paroles, pardons, commutations or terminations of

sentence, restitution, or remission of fines or forfeitures are final and are not

subject to judicial review …."

"[W]hile the courts have the power to sentence, the Board has been given

the power to pardon and parole. These are two separate and distinct powers,

neither of which invades the province of the other." *Padilla v. Bd. of Pardons &*

*Parole*, 947 P.2d 664, 669 (Utah 1997).

The broad prohibition of judicial review of a Board's parole decision is

subject to a limited exception: an offender may seek "habeas corpus review of the

board of pardon's actions." *Foote*, 808 P.2d at 735. Specifically, trial courts may

only review Board actions (1) to assure that procedural due process was not

denied, *Labrum v. Utah State Bd. of Pardons*, 870 P.2d 902 (Utah 1993), and (2)

where there has been a clear abuse of discretion. *Ward v. Smith*, 573 P.2d 781,

782 (Utah 1978). Judicial review addresses only "the fairness of the *process* by

which the Board undertakes its sentencing function," not the result. *Padilla*, 947

P.2d at 667 (internal quotation marks omitted). Courts have uniformly held that

the Board has exclusive authority to determine the actual number of years a

defendant is to serve, *see, e.g., Preece v. House,* 886 P.2d 508, 512 (Utah 1994) (citations omitted), and the court does not "sit as a panel of review on the result, absent some other constitutional claim." *Lancaster v. Utah Bd. of Pardons,* 869 P.2d 945, 947 (Utah 1994).

Plaintiffs allege broadly that the Board knew or should have known that granting parole or early release would result in tragic outcomes. However, the Board's determinations here, through the exercise of its statutory authority and discretion, are not subject to judicial review. There is no authority holding that a *third party* has any standing to challenge any Board decision—the limited exception allowing review of Board decisions allows convicted defendants to seek procedural protections and does not allow any other party to prevent discretionary parole. *Cf. Foote,* 808 P.2d at 735.[43]  This is demonstrated by the nature of relief that is available. No third party is entitled to due process from the Board. It is only an offender who is entitled to procedural protection from the Board. Similarly, a third party, not in the Board's jurisdiction, does not have the

---

[43] Indeed, even an offender/defendant could not seek a judicial determination that he was entitled to parole release. As noted in *Preece,* a court would exceed the authority of its review if it ordered a defendant released on parole. 806 P.2d at 512. The only exception would be if the defendant had exceeded his maximum term of incarceration. *Id.*

right to ensure that the Board does not hold them past the expiration of their sentence.

Further, any allegation that the Board failed to properly consider each inmate for release should be rejected because the Board may consider and weigh any factors that it deems relevant to its determination of whether an inmate will be afforded parole, which is exactly the kind of issue that is not subject to judicial review. The Board retains full discretion to determine incarceration terms on an individual basis considering the unique facts of each case. *Labrum*, 870 P.2d at 909. Plaintiffs' claims inappropriately challenge the Board's decisions rather than the fairness of the process; this argument is ill-placed and without legal authority. Challenges to the substance of the Board's decisions are outside the scope of judicial review authority. Accordingly, this Court should dismiss Plaintiffs' federal and state claims against the Board and former Director Haddon.

### 5. Plaintiffs fail to plead plausible claims against Mike Haddon.

Plaintiffs mention the Board's former Director of Administrative Services (though they allege his title was Director), Mike Haddon, in their factual allegations section, but their allegations against him are conclusory: That he "allowed unqualified persons with violent histories to be released on parole"

knowing they would not be properly supervised by AP&P[44] Even if Plaintiffs alleged that Haddon actually had a role in the Board's parole decision-making, which they cannot,[45] Plaintiffs' bare allegations against him are insufficient to state a plausible claim for relief under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Because Plaintiffs have not followed the Tenth Circuit's instruction that "it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state" *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008), the claims against Haddon should be dismissed.

### 6. The Board Defendants join State Defendants' additional arguments for dismissal of seven of Plaintiffs' causes of action.

The Board Defendants join and, under DUCivR 7-1(a)(7), incorporate the basis of the State Defendants' Motion to Dismiss for seven causes of action:

---

[44] Pls.' Am. Compl. ¶ 83.
[45] As a matter of law, Plaintiffs could not state a claim against Mike Haddon. By statute and constitution, Haddon did not have authority to make release decisions. Only the members of the Board, by majority vote, could grant an offender parole. Utah Constitution, Article VII, Section 12(2)(a); Utah Code §77-27-5(1)(b).

- **Plaintiffs have not shown personal involvement by the alleged supervisors.**

For the reasons stated by the State Defendants,[46] and which are incorporated herein, DUCivR 7-1(a)(7), Plaintiff's Claims against Director Haddon should be dismissed because Plaintiffs have failed to plead facts showing that Director Haddon was personally involved with any constitutional violation, or that there was any "affirmative link" between his action and any alleged constitutional violation, such that he could be liable as a supervisor. *E.g.* *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010); *Iqbal*, 556 U.S. at 676.

- **Plaintiffs Wood, Charles-Scott, and Miller's state-law tort actions are barred because they failed to timely file a Notice of Claim as required by the Governmental Immunity Act of Utah.**

For the reasons stated in the State Defendants' *original* Motion to Dismiss[47] The state tort claims of Wood, Charles-Scott, and the Millers are barred because they failed to file timely notices of claim. Pursuant to the Immunity Act, "[a] claim against a governmental entity, or against an employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority, is barred

---

[46] *See* State Defs.' Mot. (doc. 50) § 2.2.
[47] *See* Mot. to Dismiss. (doc. 22) § 3.2.

unless notice of claim is filed … within one year after the claim arises regardless of whether or not the function giving rise to the claim is characterized as governmental." Utah Code § 63G-7-402. This is a "jurisdictional prerequisite" to a lawsuit. *Bradford v. Erlacher*, No. 2:07-CV-00108-TC, 2007 WL 1052470, at *1 (D. Utah Apr. 4, 2007) (unpublished).

Moreover, "[w]hen the claim is against the government, or against its employees acting in their official capacity, the scheme provided by the Immunity Act replaces the limitations period for claims against private actors contained within Title 78B." *Peak Alarm Co. v. Shanna Werner*, 2013 UT 8, ¶ 26, 297 P.3d 592.

Here, Wood, on behalf of the estate of Linda Nemelka, Charles-Scott, on behalf of the estate of Shandon Nicole Scott, and the Millers, on behalf of M.M., filed three separate notices of claim on September 27, 2022.[48] Each of these notices were filed more than a year after the respective incidents. The crime against Linda Nemelka occurred March 10, 2020,[49] more than two years before the notice of claim was filed. The crime against Shandon Scott occurred May 1, 2021,[50] more than a year before the notice of claim was filed. Finally,

---

[48] Exhs. 1-3 to State Defs.' original Mot. to Dismiss. (docs. 22-1, 22-2, 22-3).
[49] Pls.' Am. Compl. ¶ 62.
[50] *Id.*

the crime against M.M. occurred January 27, 2020,[51] two-and-a-half years before the notice of claim was filed. By failing to file notices of claim within a year of these incidents, the requirements of Utah Code § 63G-7-402 are not met and Wood, Charles-Scott and the Millers' state tort claims should be dismissed with prejudice.

- **Plaintiffs' state-law tort actions are substantively barred by the Immunity Act.**

The Governmental Immunity Act of Utah retains immunity for state tort claims against the State or State employees that "arise[] out of, or in connection with, or result[] from, assault [or] battery ...." Utah Code § 63G-7-201(4)(b). For the reasons stated by the State,[52] and which are incorporated herein, DUCivR 7-1(a)(7), Plaintiff's tort claims all arise out of the assaults and batteries committed by the criminals mentioned in the case. Accordingly, all the state tort claims must be dismissed.

- **Plaintiffs have failed to state a plausible claim for violation of the Utah State Constitution.**

For the reasons stated by the State Defendants,[53] and which are incorporated herein, DUCivR 7-1(a)(7), Plaintiffs' ninth cause of action, for

---

[51] Pls.' Am. Compl. ¶ 31.
[52] *See* State Defs.' Mot. § 4.1.
[53] *See* State Defs.' Mot. § 2.1.

damages under the Utah Constitution, fails to state a claim.

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiffs'

Amended Complaint with prejudice.

Respectfully submitted on this 29th day of April, 2024,

OFFICE OF THE UTAH ATTORNEY GENERAL


*/s/Kyle J. Kaiser*
KYLE J. KAISER
CHRISTIANA L. BIGGS
Assistant Utah Attorneys General
*Counsel for Defendants Utah Board of Pardons &
Parole, and Mike Haddon*

## WORD COUNT CERTIFICATION

Under DUCivR 7-1(a)(5)(C), I certify that this Motion to Dismiss contains

**7469** words and complies with DUCivR 7-1(a)(4).

OFFICE OF THE UTAH ATTORNEY GENERAL


*/s/Kyle J. Kaiser*
KYLE J. KAISER
CHRISTIANA L. BIGGS
Assistant Utah Attorneys General